IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-HC-2123-FL

| | |
|---|---|
| K.R. JONES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| WARDEN JETT, | ) |
| | ) |
| Respondent. | ) |
| | ) |

This matter came before the court on the motion to dismiss, or in the alternative, for summary judgment[1] (DE 15) of respondent Warden Jett ("respondent"). Petitioner responded to respondent's motion. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants respondent's motion for summary judgment.

**STATEMENT OF CASE**

With this action, petitioner alleges that his rights pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution were violated in the course of two disciplinary hearings. Petitioner was housed at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester") at the time he received the disciplinary convictions at issue in this action. Coll Aff.[2] ¶ 9.

---

[1] Because respondent attached documents that are outside of the pleadings, the court construes respondent's motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

[2] Cornelia Coll ("Coll") submitted an affidavit in support of respondent's motion for summary judgment. Coll is employed as a paralegal specialist at the Federal Correctional Complex in Butner, North Carolina. Coll Aff. ¶ 1.

Petitioner was charged with the first disciplinary offenses of misuse of equipment (Code 319) and being in an unauthorized area (Code 316), on May 28, 2010. Id. ¶ 9. Petitioner was provided a copy of the incident report that same day. Id.

On June 2, 2010, the Unit Discipline Committee referred the charges to FMC Rochester's discipline hearing officer ("DHO") for a hearing. Id. ¶ 10, and Attach. 6, p. 1. Petitioner received copies of the "Notice of Discipline Hearing Before the (DHO)" and the "Inmate Rights at Discipline Hearing" on June 2, 2012. Id. ¶ 11. On June 3, 2010, staff member Kathy Johnson agreed to serve as petitioner's staff representative. Id.

Petitioner's first disciplinary hearing was held on June 8, 2010. Id. ¶ 12, and Attach. 6, p. 6-8. After reviewing the evidence, the DHO determined that the offense elements were not met for the charged offenses. Id. The DHO, however, found that petitioner had committed the prohibited act of refusing to obey an order (Code 307). Id. The DHO hearing record included the following summary:

> This finding is based on the reporting staff member's written statement that on May 27, 2010, at approximately 3:40 p.m. I observed [petitioner] typing on the computer located on the D-A unit. [petitioner] lives on the D-B unit. Inmate Kalady was standing behind [petitioner] and appeared to be telling him what to type. During several town halls the inmates have been told they are not allowed to use another inmate's account or use computers on another unit. [Petitioner] and Kalady were warned if caught again they would receive incident reports. On May 28, 2010, I found [petitioner] on the D-A unit computer with inmate Kalady standing behind him. Inmate Jones would not be able to access his own account on the wrong unit.
>
> The DHO considered the memorandum dated June 1, 2010, from J. Baker, Correctional Counselor, stating "On May 27, 2010, I was exiting Building 10 with counselor Lewis when he observed [petitioner] on the computer on the 10/1 unit. [Petitioner] lives on the 10/2 unit and is not authorized to use the 10/1 computer. Inmate

2

> Kalady [], who lives on 10/1 was standing directly behind [petitioner] while he was typing. When counselor Lewis asked what they were doing Kalady stated [petitioner] was being nice and helping him since he cannot see. Mr. Lewis told them this was not authorized and further stated that if they continued this behavior in the future they would be subject to an incident report."
>
> The DHO considered the memorandum dated June 2, 2010, from D. Hammel, Inmate Services, stating, "Yes, TRULINCS reads Sentry. If the inmate does not live on the unit, he is not allowed on the computer for that unit. Example, when an inmate is moved from 2/1 to 2/2 at 3:00 p.m. he will not be allowed to use 2/2 computer until the following morning at 6:00 a.m. Also, all town halls stated inmates are not to give their account numbers to another inmate."
>
> You stated to the DHO, "Both times I was coming back from pill line. The computer is right by the elevator. I was waiting for the elevator when Kalady stopped me both times and asked me for help. His sister had just had a heart attack and was in the hospital. All I did was help. He typed all his own pin numbers. Last I knew, there was no prohibition against helping someone out. I don't recall Mr. Lewis ever stating he would give me an incident report next time. He just told us to get off the machine."
>
> Your witness, Michael Kalady, stated, "The day before my sister had a heart attack. I panicked and emailed and my family. I had been waiting for a response, so I checked the computer. The response was there, but I can't read. I'm a college graduate. I can type, and just not read because I'm blind. I have no peripheral vision. So I asked Jones to help me with reading it. Right then, Mr. Lewis came out into the hall and hollered at us, which freaked me out, so I left the computer and went back to my room."
>
> After careful consideration, the DHO . . . believes that you refused a direct order from the reporting officer as you were previously directed not to engage in the aforementioned activity. Therefore, the DHO finds that you committed the prohibited act of Refusing to Obey and Order, Code 307.

Id. Attach. p. 7. As a result of the DHO's findings, petitioner was sanctioned with the following:

(1) fourteen (14) day loss of good-time credit; (2) fifteen (15) days of disciplinary segregation, suspended pending one hundred eighty (180) days of clear conduct; (3) thirty (30) day loss of email

3

privileges.[3] Id. ¶ 12. On October 20, 2010, petitioner was notified of his appellate rights and received written notice of the DHO report. Id. Attach. 6, p. 8.

Petitioner's second incident report which charged him with refusing to obey an order (Code 307) was issued on August 12, 2010. Id. ¶ 13. Petitioner was provided a copy of the incident report that same day. Id.

On August 17, 2010, the unit discipline committee reviewed petitioner's incident report, and referred the charge to FMC Rochester's DHO for further hearing. Id. ¶ 14, and Attach. 7, at p.1. Petitioner received copies of the "Notice of Discipline Hearing Before the (DHO)" and the "Inmate Rights at Discipline Hearing." Id. ¶ 15. On August 18, 2010, staff member Deborah Hall agreed to serve as petitioner's staff representative. Id.

Petitioner's disciplinary hearing was held on August 31, 2010. Id. ¶ 16, and Attach. 7, pp. 6-9. After reviewing the evidence, the DHO determined that petitioner had committed the prohibited act of refusing to obey an order (Code 307). Id. The DHO hearing record included the following summary:

> This finding is based on the reporting staff member's written statement that on August 12, 2010, at 10:45 a.m., while at the north door of building nine, I witnessed [petitioner] seated on the floor blocking the hallway by the north door. I asked [petitioner] if he was not well or light headed. In a confrontational manner, [petitioner] replied, "No!" I gave [petitioner] a direct order to get off the floor. [Petitioner] replied, "I don't have to, why don't you go talk to the lieutenant." [Petitioner] continued to argue and was sent to the Lieutenant's office. [Petitioner] has been counseled by me for blocking the hallway and creating a safety hazard.

---

[3] Petitioner alleges that the sanctions listed for this disciplinary conviction in the DHO report are incorrect. Petitioner states that the sanctions set forth above are the correct sanctions he received. Pet. p. 2.

4

The DHO considered the memorandum dated August 12, 2010, from T. Sheldrake, Facilities Manager, stating, "At approximately 10:45 a.m., August 12, 2010 I was walking out of building 9 when I was asked by [petitioner] to allow him to go to the Lieutenants office. Officer Kepp stepped into the sally port to address [petitioner]. The issue was Officer Kepp had asked [petitioner] not to sit on the floor in the hall waiting for the move. [Petitioner] stated that the Lieutenants gave him permission to sit in the hallway whenever he wanted to. The inmate was rude to the officer and kept insisting on speaking to a Lieutenant. I explained to the inmate that sitting on the floor was blocking an egress and was not permitted. The inmate was still insisting on speaking to a Lieutenant."

The DHO considered the memorandum dated August 18, 210, from D. Anderson, Correctional Officer, stating "When I walked into building nine I observed [petitioner] and Officer Kepp talking to each other. Mr. Kepp was telling him that he was not allowed to sit in the hallway by the door and if he wanted to sit he should go sit in the chairs in the outpatient area. Officer Kepp then asked [petitioner] if he was feeling alright, in which [petitioner] stated he felt fine. Officer Kepp then gave [petitioner] a direct order to stand up, where [petitioner] told Kepp that he wanted to see a Lieutenant."

The DHO considered the memorandum dated August 20, 2010, from S. Lloyd, Lieutenant, stating, "On August 6, 2010, I counseled [petitioner] at the lieutenant's office. [Petitioner] stated officer Kepp had problems with him sitting on the floor for pill line. I asked him why he was sitting (squatting) on the floor. [Petitioner] said he had a blood born disease and often felt weak. I advised [petitioner] if he was having difficulty standing pill line to sit in a blue chair or see the necessary medical personnel to acquire a walker or wheel chair or if needs be to raise his hand and be assessed medically if it was life threatening. He was instructed that sitting on the floor was not appropriate behavior. I said I would speak to officer Kepp about this matter. I did speak with officer Kepp via telephone and advised him to monitor how he addressed inmates and be aware of inmates with special issues. I told officer Kepp what I had advised [petitioner] to do if he was not feeling well for future reference. [Petitioner] disregarded my instructions and sat on the floor a few days later for pill line, demanding to speak to a lieutenant. He was taken to special housing and given administrative charges. I spoke to [petitioner] again on August 13, 2010 in the segregation unit. [Petitioner] was again advised if he was feeling dizzy or ill he should have sat in a

5

chair or sought out a health care professional for assistance. His attitude was poor and non-cooperative."

You stated to the DHO, "I'm currently going through chemotherapy for liver disease. Ms. Hall has my medical records and can verify this information. The treatment makes me tired, weak, and out of breath. The Interferon shots make me sick for a while afterwards. I usually spend the day in bed reading my book. It was right after my shot and it was hot and humid. The C.O. follows me from pill line and told me he's going to write me a shot unless I got up off the floor. I wasn't even causing a problem, it was hot in the hallway and I was reading my religious newsletter. I didn't tell him no. I told the officer I had permission from Lt. Lloyd and asked if she had talked to him. He stated she did, and I am telling you to get up anyways. It is false in his incident report he stated he sent me to the Lieutenant's Office, I asked to go there. The previous Friday, I had talked to Lt. Lloyd about this officer; she informed me later she had "squashed the situation." But this C.O. came up to me on this date and started it again. The officer did ask me if I felt okay, to which I stated I felt fine, because at the time, I did, since I was sitting on the floor. Other people do this, but I'm the only one the C.O. harasses. He didn't send me to the Lieutenant's Office. I had a problem with this officer last week." The DHO advised you the Bureau of Prisons takes allegations of staff misconduct seriously. Your allegations will be forwarded to the appropriate department for review.

Your witness, Timothy White, stated "I don't recall being there at that time. I don't believe I was there for that one (pill line). Only thing I can recall is his asking for a Lieutenant and Mr. Kepp refused like he did to me a couple of times."

After careful consideration, the DHO believes that you refused a direct order from the reporting officer as you were previously directed not to sit on the floor in the hallway. You indicate the side effects of the medication cause you to become tired, weak, and out of breath. The DHO considered the Patient Medication Information which identifies the possible side effects of the medication you are currently prescribed and to include tiredness and weakness. However, the DHO gave greater weight to the reporting officer's statement that he asked you if you were light headed or unwell, to which you replied you were not light headed or unwell. Additionally, Officer Anderson stated, "Officer Kepp then asked [petitioner] if he was feeling alright, in which [petitioner] stated he felt fine." Therefore, based on the greater weight of the evidence, the DHO

> finds that you committed the prohibited act of Refusing to Obey and Order, Code 307.

Id. Attach. 7, p. 7. As a result of the DHO's findings, petitioner was sanctioned with the following: (1) fourteen (14) day loss of good-time credit; (2) fifteen (15) days of disciplinary segregation, which was a sanction from a previously suspended sanction; and (3) thirty (30) day loss of telephone privileges. Id. On October 20, 2010, petitioner was notified of his appellate rights and received written notice of the DHO report. Id. Attach. 6, p. 8.

On March 12, 2012, petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner's habeas petition challenges his disciplinary convictions on the grounds that they violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution for the following reasons: (1) his staff representatives were not provided the relevant materials; (2) his appeal was improperly rejected as untimely, thereby denying him the opportunity to appeal; and (3) the disciplinary convictions are not supported by evidence. As relief, petitioner requests that twenty-eight (28) days of his lost good-time credit be restored.

On October 5, 2012, respondent filed a motion for summary judgment arguing that petitioner's disciplinary conviction does not violate the due process clause, and that he is not entitled to relief. Petitioner responded.

**DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact.

7

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.   Analysis

Petitioner alleges that the disciplinary proceedings violated his rights pursuant to the Fourteenth Amendment of the United States Constitution. The Supreme Court has mandated certain procedural safeguards when loss of statutory good-time credit is at issue. See Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Under the Wolff standard, an inmate is entitled to the following: (1) written notice of the charges at least twenty-four (24) hours in advance of the hearing; (2) a written statement by the fact finders as to the evidence relied on and reasons for disciplinary action; and (3) to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Id. at 564-566. Additionally, the findings of a prison disciplinary board must be supported by some evidence in the record, Walpole v. Hill, 472 U.S. 445, 454-55 (1985), and be made by an impartial adjudicator. Wolff, 418 U.S. at 570-71. The court considers petitioner's due process claims in turn.

1.   Failure to provide materials to Staff Representatives

The court first addresses petitioner's claim that prison officials failed to provide a copy of the investigation and other relevant materials to his staff representatives. Regarding petitioner's first disciplinary conviction, his staff representative stated to the DHO that he "met with [petitioner] and reviewed the packet. All his rights were afforded. [Petitioner] didn't ask me to do anything . . . ."

8

Coll Decl. Attach. 6, pp. 6-7. This statement is contrary to petitioner's contention that his staff representative was denied access to materials related to the incident report. Petitioner has not presented any evidence to the contrary. Moreover, petitioner concedes that his staff representative received a copy of the incident report, the notice of disciplinary hearing, and the staff representative duties. Pet'r's Resp. p. 5.

As for petitioner's second disciplinary conviction, petitioner's staff representative informed the DHO that he met with petitioner prior to the disciplinary hearing and that he reviewed the disciplinary packet. Coll Aff. Attach. 7, p. 6. The staff representative further indicated that he gathered witness statements and petitioner's medical records. Petitioner has not presented any evidence to the contrary.

Based upon the foregoing, the record reflects that the staff witnesses for both of petitioner's disciplinary convictions reviewed the disciplinary packet, spoke with witnesses, and presented evidence to the DHO. There is no evidence in the record to reflect that either staff representative was prevented from fulfilling his/her duties or that the representatives did not receive necessary materials. Thus, the record does not support a finding that petitioner's due process rights were violated.

2.  Appeal Improperly Rejected

Petitioner next argues that his due process rights were violated because the appeal he filed for his first disciplinary conviction was rejected as untimely. However, no due process right attaches to the administrative appeals process. See Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990); cf. Rizo v. Pugh, No. 4:12-cv-1798, 2013 WL 774558, at *4 (N.D. Ohio Feb. 26, 2013) (finding no due process violation where administrative appeal of disciplinary conviction was

9

rejected as untimely).[4] According, the court GRANTS respondent's motion for summary judgment as to this claim.

  3.  Sufficiency of the Evidence

Finally, petitioner contends that his disciplinary convictions were not supported by sufficient evidence. Decisions by a disciplinary board to revoke good-time credits pass scrutiny under the Due Process Clause if there is some evidence in the record to support the conclusions. Walpole, 472 U.S. at 454. Federal courts will not review the accuracy of the disciplinary hearing officer's fact finding de novo or for clear error. See Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990). Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [disciplinary hearing officer]." Id. (quotation omitted).

The court begins by examining petitioner's first disciplinary conviction. Petitioner asserts that he did not disobey a staff order, that there was no proof that he used inmate Kalady's email account, and that there was no prison rule prohibiting inmates from assisting other inmates with a disability. Pet. pp. 2-3. However, the record reflects that the reporting officer observed petitioner typing on a computer in another housing unit. Coll Decl. Attach. 6, pp. 6-8. The inmates had previously been informed that they were not to use another inmate's email account, or use the computers on a housing unit other than their own. Id. Based upon the evidence presented at

---

[4] The court notes that petitioner's appeal of his first disciplinary conviction was untimely. Specifically, Federal Bureau of Prisons policy provides that an administrative remedy request must be filed within twenty (20) calendar days following the date of the incident upon which the request is based. See 28 C.F.R. § 542.14. Petitioner received a copy of the disciplinary hearing report for his first disciplinary conviction on October 20, 2010. Coll Decl. Attach. 6, p. 8. Accordingly, petitioner's administrative remedy requesting an appeal of his first disciplinary conviction was due by November 9, 2010. Petitioner did not file his administrative remedy request until November 10, 2010, and it was rejected as untimely. Pet. Appendix, p. 6.

10

petitioner's disciplinary hearing, the disciplinary hearing officer found that petitioner was guilty of refusing to obey an order. The court finds that this evidence satisfies the "some evidence" standard, and the Due Process Clause was not violated. See, e.g., Hill, 472 U.S. at 454–56; Baker, 904 F.2d at 932.[5]

The court now turns to petitioner's second disciplinary conviction for refusing to obey a direct order to stand when he was sitting on the ground while in the pill line. Petitioner asserts that he did not refuse the correctional officer's order to stand. Petitioner instead explains that he needed to sit on the floor because his medical condition caused him to be tired, weak, and out of breath. Coll Aff. Attach. 7, p. 8. By petitioner's own admission to the DHO, the record reflects that a correctional officer gave petitioner a direct order to stand up. Id. Attach. 7, p. 8. Although petitioner states that he was sitting on the floor because he was feeling weak, the record reflects that Officer Kepp asked petitioner if he was feeling unwell, and petitioner responded that he felt fine. Id. Attach. 7, p. 7. The court finds that this evidence satisfies the "some evidence" standard, and the Due Process Clause was not violated. See, e.g., Hill, 472 U.S. at 454–56; Baker, 904 F.2d at 932.

As for the remaining Wolff requirements, petitioner received advance written notice of the disciplinary charges and he received a written statement by the disciplinary hearing officer of the evidence relied on and the reasons for the disciplinary action. Thus, there is no due process violation. Based upon the foregoing, respondents' motion for summary judgment is GRANTED.

## CONCLUSION

---

[5] To the extent petitioner seeks to assert a claim pursuant to the American Disabilities Act, 42 U.S.C. § 12131. Petitioner, however, does not state a cognizable claim for relief because he does not allege that he was denied access to a prison program, activity, or service on account of any disability. See 42 U.S.C. § 12132. Rather, petitioner's claim appears to be based upon another inmate's alleged disability.

11

For the foregoing reasons, respondent's motion for summary judgment (DE 15) is GRANTED. The Certificate of Appealability is DENIED. <u>See</u> 28 U.S.C. § 2253. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 30th day of August, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge